IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 9, 2009 Session

**MARIO PISANI v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-61243      Don R. Ash, Judge**

**No. M2008-02206-CCA-R3-PC - Filed November 18, 2009**

A jury convicted the petitioner, Mario Pisani, of seven counts of rape of a child, seven counts of rape, eight counts of sexual battery by an authority figure, seven counts of aggravated sexual battery, and seven counts of incest. The trial court sentenced him to forty-two years in the Tennessee Department of Correction. On direct appeal, this court upheld the convictions. The petitioner now appeals the judgment of the Rutherford County Circuit Court denying post-conviction relief and asserts that he received ineffective assistance of counsel. Specifically, the petitioner argues that trial counsel was ineffective in failing to impeach the victim with a prior inconsistent statement. After review, we affirm the judgment denying post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which David H. Welles and Thomas T. Woodall, JJ., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Mario Pisani.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Laurel A. Hemenway, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Background**

Following a trial, a Rutherford County jury convicted the petitioner of seven counts of rape of a child, seven counts of rape, eight counts of sexual battery by an authority figure, seven counts of aggravated sexual battery, and seven counts of incest. The trial court sentenced the petitioner to

forty-two years in the Tennessee Department of Correction. On appeal, this court affirmed the trial court's convictions and sentence. *See State v. Pisani*, No. M2006-00550-CCA-R3-CD, 2007 WL 749642, at *1 (Tenn. Crim. App., at Nashville, March 8, 2007), *perm. app. denied* (Tenn. June 18, 2007). The following is a summary of the facts of this case taken from this court's opinion on direct appeal:

> Prior to trial, the [petitioner], who was married to the victim's mother between 2001 and 2003, filed a motion with the Rutherford County Criminal Court giving notice of his intent to use evidence of the victim's prior sexual behavior at trial. The [petitioner] stated that he wished to introduce evidence of the victim's sexual behavior in order to demonstrate her sexual knowledge, specifically "her language, her mannerisms, and her being able to express what happened to her." Specifically, the defense wished to introduce evidence regarding alleged incidents of sexual assault against the victim, J.M., by one Kenneth Holt. The victim testified at the pre-trial hearing that the incidents involving Holt took place at least a year after the defendant performed the same acts upon her and that she gained knowledge of these sexual acts from the [petitioner] and not Holt. She also testified that a boy of her age group had digitally penetrated her at a movie theater and that she had sexual intercourse with her boyfriend in September 2003. Pursuant to Rule 412 of the Tennessee Rules of Evidence, the trial court ruled that the [petitioner] could only ask the victim limited questions about her prior sexual history. The court ruled that the [petitioner] could ask the victim whether she had engaged in specific sex acts with other men and whether those events occurred before or after the events involving the [petitioner]; the [petitioner] could not ask the names of these other men, the number of times these events took place, and whether the victim consented, as these facts were not relevant to the victim's sexual knowledge. The case then proceeded to trial.

> At trial, the victim testified that in April 1999, after the [petitioner] had moved into the house with the victim and her mother, the [petitioner] abused her for the first time. The victim stated that she was nine years old at the time. On that occasion, the [petitioner] had the victim remove her clothing and he removed his own clothes before fondling the victim's breasts and digitally penetrating her. A few weeks later, the [petitioner] called the victim into his bedroom, where he was watching pornography. The [petitioner] had the victim remove her clothes; while viewing the naked victim, the [petitioner] masturbated and ejaculated onto her stomach.

> When the victim was eleven, the [petitioner] was alone with the victim at his tattoo shop. He again felt her breasts, digitally penetrated her, and masturbated. On this occasion, the [petitioner] ordered the victim to perform fellatio on him, which she did. On another occasion, when the victim was twelve, the [petitioner] ordered the victim to fellate him while they rode in his vehicle. The [petitioner] also fondled the victim's breasts at that time. Following that incident, the [petitioner] gave the

victim twenty dollars.

The victim testified that the [petitioner] sexually assaulted her on three other occasions while the victim was twelve. On one occasion, the [petitioner] fondled the victim's breasts and digitally penetrated her while he masturbated. On another occasion, the [petitioner] asked the victim to manually stimulate his penis. On another occasion, the [petitioner] penetrated the victim with a vibrator.

The abuse continued after the [petitioner] married the victim's mother in 2001. While the victim's mother was at work, the [petitioner] engaged the now thirteen-year-old victim in simultaneous oral sex, which the [petitioner] explained to the victim was commonly called "sixty-nine." The victim testified that she did not know the meaning of this term before the [petitioner] explained the meaning to her. On another occasion, the [petitioner] sexually assaulted the victim while her mother was away at a birthday party. The victim testified that the [petitioner] also, on one occasion, offered the victim money to let him have intercourse with her. The victim testified that she did not tell anyone about these incidents until November 16, 2003, after the [petitioner] and the victim's mother divorced. The victim said she kept quiet out of fear over what the [petitioner] might do if she revealed what had happened to her.

The victim testified that she observed a small mole on the [petitioner]'s penis during one of the sexual encounters with the [petitioner]. A photograph of the [petitioner]'s penis introduced into evidence at trial indicates the existence of a mole similar to one described by the victim. The [petitioner]'s mother, Jeanette Harrison, testified that the victim's mother mentioned the mole to Harrison while Harrison prepared Thanksgiving dinner. Harrison claimed that the victim may have found out about the mole that way, though Harrison was unsure as to whether the victim, who was in another room at the time, overheard the conversation. Harrison also testified that the victim's mother had not expressed any concern regarding inappropriate sexual activity by the [petitioner] during their marriage. The [petitioner], testifying in his own defense, stated that he had never engaged in inappropriate sexual activity with the victim.

After the [petitioner] testified, the state called the victim's mother as a rebuttal witness. The state's attorney had earlier asked Harrison whether she had threatened the victim's mother by stating that the [petitioner] should have killed the victim's mother when he had the chance. Harrison stated that she made no such threat. Over the [petitioner]'s objection, the victim's mother testified that Harrison had, while both women were in an elevator following one of the trial sessions, told the victim's mother "He [the [petitioner]] should have killed you when he had a chance, you bitch." The victim's mother also claimed that Harrison said "you're nothing but a lying whore and your daughter is a first-class slut." After the two

women exited the elevator, the victim's mother claimed that Harrison "flipped off" the victim's mother and said, "Smile, you're on *Candid Camera,* bitch."

> The jury found the [petitioner] guilty on seven counts of rape of a child, seven counts of rape, seven counts of aggravated sexual battery, eight counts of sexual battery by an authority figure, and seven counts of incest. The trial court sentenced the [petitioner] to forty-two years in prison; because the [petitioner] was ordered to serve the full sentence on the child rape convictions and because two of the child rape sentences were imposed consecutively, the [petitioner] would serve at least forty years in prison.

*Id.* at *1–3. On direct appeal, this court affirmed the convictions and sentence lengths. *Id.* at *1.

On January 25, 2008, the petitioner filed for post-conviction relief alleging ineffective assistance of counsel, inefficient instructions to the jury, the state's failure to disclose exculpatory evidence, and due process violations. The post-conviction court appointed counsel and, on July 28, 2008, heard evidence on the merits of petitioner's claim. The petitioner's counsel limited the issues discussed at the hearing to the ineffective assistance of counsel claim.

The petitioner testified that his trial counsel brought the victim's sexual background before the court, both in appropriate pre-trial motions and during the trial. According to the petitioner, the victim had made a statement to the Our Kids representative at the Metro Nashville General Hospital that would have proven that the victim had been untruthful regarding her sexual background. The petitioner said that the trial court did not allow counsel to use the statement to impeach the victim when she testified, despite allowing other factual questions regarding the victim's sexual history. When asked by the post-conviction court what the petitioner had wanted counsel to do regarding the Our Kids report, the petitioner replied, "I think that he should have fought it a little bit harder." The petitioner testified that counsel did not make an offer of proof of the Our Kids report before or during the trial. The post-conviction counsel did make an offer of proof of the Our Kids report, which the court accepted as Exhibit One. The petitioner further testified that trial counsel, who also represented the petitioner on his direct appeal, presented the issue of the Our Kids statement in a motion for new trial, but counsel did not pursue the issue on appeal.

The petitioner testified that his trial counsel did not have an Our Kids representative testify at trial regarding any inconsistent statement. According to the petitioner, counsel did not present testimony from Our Kids "because it would have cost too much money." The petitioner testified that counsel's failure to impeach the victim affected his rights because impeachment might have influenced the jury when weighing the victim's credibility.

On cross-examination, the petitioner testified that the victim discussed some of her sexual encounters in the Our Kids report, but the petitioner said that it was his belief that the Our Kids representatives themselves would have had more information to add, had they presented live testimony. The petitioner then testified that Ms. Seagraves, a DCS worker, told someone at Our

Kids that the victim said she was not sexually active. The petitioner said that he did not know that Our Kids did not employ Ms. Seagraves. The petitioner testified that the victim's trial testimony corresponded with what the victim told the Our Kids representative, according to the Our Kids report. The petitioner said that he could not be sure that the live testimony of an Our Kids representative would have added to his case. Finally, the petitioner testified that he did not see the appeal before his trial counsel had filed.

On redirect examination, the petitioner testified that he was present during the Rule 412 hearing when the victim testified as to her sexual history. The petitioner said that the victim's testimony did not match the Our Kids report because in the Our Kids report, the victim had omitted one sexual encounter and mischaracterized another. The petitioner stated that, had the jury known of the victim's allegedly inconsistent statement, it would not have guaranteed a different result. On recross-examination, the petitioner said that he did not know that Ms. Seagraves did not write the Our Kids report and that what the victim told Ms. Seagraves was open to interpretation.

On direct examination, trial counsel testified that he reviewed the Our Kids report and went to Nashville to interview the person who made the report, but he was unable to meet that person. Counsel testified that the victim's statement to Our Kids referenced the petitioner's violent tendencies, but he did not strategically decide to avoid the Our Kids report. He further testified that he appealed the Rule 412 ruling by the trial court, which included the trial court's exclusion of the Our Kids report. He testified that the only value of the Our Kids report was to impeach the victim in case of an inconsistent statement. Counsel further testified that the appellate court upheld the trial court's Rule 412 ruling.

Counsel testified that he met with the petitioner numerous times and discussed with him the state's case against the petitioner. He testified that he met with witnesses and attempted to meet with the Our Kids representative. Additionally, counsel stated that he investigated the petitioner's case sufficiently, gave the petitioner an adequate defense, and met acceptable standards for defense counsel.

On cross-examination, counsel stated that there were discrepancies between the victim's Our Kids statement and her testimony in court. He testified that he had moved the trial court to allow impeachment via the Our Kids document, but the trial court would not allow counsel to use the document for impeachment purposes. Counsel further stated that the trial court would have allowed a representative from Our Kids to give live testimony regarding any inconsistent testimony. He said that he could not explain why he did not make an offer of proof regarding the Our Kids document. Counsel testified that he presented the issue of the Our Kids document in the motion for new trial but did not mention the document while arguing the Rule 412 issue on appeal. Counsel also testified that he would have liked to have examined the victim regarding her alleged untruthfulness during the trial.

Based on the evidence presented at the hearing, the post-conviction court entered an order denying post-conviction relief. The post-conviction court ruled that the petitioner did not meet his

burden of proving ineffective assistance. The court found that trial counsel's performance did not fall below an objective standard of reasonableness and, even if it had, no prejudice to the petitioner resulted. The petitioner has appealed.

## Analysis

On appeal, the petitioner raises the single issue of ineffective assistance of counsel.[1] Specifically, the petitioner argues that trial counsel was ineffective in failing to impeach the victim with a prior inconsistent statement. Upon review, we conclude that the petitioner failed to demonstrate that he was denied the effective assistance of counsel.

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id.*

To establish ineffective assistance of counsel, the petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State,* 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Id.* at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Also, a fair assessment of counsel's performance, "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). The fact that a particular strategy or tactical decision failed does not by itself establish ineffective assistance of counsel. *Goad*, 938 S.W.2d at 369. However, deference is given to strategy and tactical decisions only if the decisions are informed ones based upon adequate preparation. *Id.* (citations omitted).

---

1. In his petition, the petitioner argued that his claim of ineffective assistance of counsel was supported by a number of grounds that he has abandoned on appeal. Since our review generally does not extend to issues not presented for review, we decline to address arguments in support of the petitioner's claim of ineffective assistance of counsel pursued below, but not presented to this court for review. *See* Tenn. R. App. P. 13(b).

The petitioner argues that counsel should have impeached the victim with an allegedly inconsistent statement she made to an Our Kids representative. The petitioner testified that counsel argued in pre-trial and post-trial motions that the trial court should allow him to introduce the Our Kids report for impeachment purposes, but counsel did not mention the report in the direct appeal. The post-conviction court found that an evidentiary ruling from the trial court excluded the Our Kids report and that counsel was bound to follow the trial court's ruling. The post-conviction court also found that counsel's failure to impeach the victim with the Our Kids report did not amount to conduct below an objective standard of reasonableness. We agree. The record shows that counsel did attempt to impeach the victim's inconsistent statement, but the trial court precluded him from doing so. Additionally, the record shows that counsel argued the underlying evidentiary issue on direct appeal. We conclude that the petitioner has failed to show that counsel was ineffective by not impeaching the victim with the Our Kids report.

The petitioner further asserts that trial counsel should have presented a witness to impeach any inconsistent statements made by the victim. The record indicates that the trial court ruled that a representative from Our Kids could testify in rebuttal to the victim's testimony. Evidence presented at the post-conviction hearing showed that counsel went to Nashville to meet with the person who wrote the report but was unable to see her that day. The petitioner did not present the author of the report at the post-conviction hearing. The petitioner did not meet his burden to present the witnesses that he claimed his attorney should have presented at trial. Generally, the presentation of these witnesses at the post-conviction hearing is necessary to prove that counsel's failure to utilize these witnesses resulted in prejudice to the petitioner. *See Black v. State,* 794 S.W.2d 752, 757 (Tenn. Crim. App.1990). Neither the post-conviction court nor this court may speculate on what a witness' testimony might have been if introduced by counsel. *Id.* Accordingly, the issue is without merit. Because the petitioner did not prove that counsel was ineffective, there is no need to reach the second prong of the *Strickland* test. *Strickland*, 466 U.S. at 697.

## Conclusion

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____

J.C. McLIN, JUDGE